Illinois University. Mr. Dunham. Good morning, your honors. My name is Daryl Dunham. I'm representing Nicholas Hess. The facts are briefly as follows. On November 28, 2013, my client had his 21st birthday, and with the benefit of 20-20 hindsight, he made a mistake. He went to a tavern in a bar in Marion, Illinois, with his sister, his brother, and his girlfriend. And there was some kind of a ruckus that developed in the bar, and the four of them decided that they counted a fellow by the name of Aaron Franks, who is the victim in the criminal prosecution. According to my client's party, Mr. Franks assaulted one of the members of the party, which enraged my client, who chased Mr. Franks into its vehicle and pounded on the glass, I believe it was the driver's door of the vehicle. At no point in time was the vehicle itself damaged. An officer from the Marion Police Department was called to the scene, noticed my client chasing Mr. Franks into the vehicle, and asked him what happened. He explained that Mr. Franks had assaulted a member of the The officer went into the bar, found out that there had been an altercation in the bar, that racial epithets had been hurled. There had actually been a fight where somebody would actually had blood all over his body and clothing. Subsequently, a blood spatter test was taken of my client, Mr. Hess, and it would prove to be negative. There was no evidence, direct evidence, that my client ever had a knife or a weapon or anything like that of the nature. Mr. Franks, as it turns out, had been stabbed and went to the ER of the local hospital. This is now when the officer shows up and he sees pounding on the window, etc. He encounters your client. Does Franks hang around or isn't he driving the car? Franks, from the police report, it is very clear that very shortly after this, he got in the car, he was in the car, and he went directly to the hospital ER. So he didn't hang around if the officer told him to? No, and I think the record, to be fair, I don't think the officer ever had an issue with Franks hanging around. He's got other things to do. Policeman goes to the ER and asks Franks some of the questions. In the meantime, a primary officer has gone in, got his information, come out and told my client that he can leave. He's satisfied he wasn't in any way involved in the fight or the altercation. Counsel, what's the status of the criminal charges against Mr. Hess at this point? They've been dismissed. When was that? I don't know the exact date. It's been, I would say, approximately a year. And there was, my client did plead guilty to the misdemeanor of pounding his fist on the windshield. All of the other remaining charges were dismissed with prejudice. Now that's not in the record. That's what my client and his criminal defense counsel is telling me. Dismissed about a year ago, but long after the expulsion? No question. At the time of the expulsion, the charges were still pending. Well, a police officer at the ER asked Franks some questions and there's a huge dispute between the defendants and Mr. Hess. What we can tend happen is, is that Mr. Franks provided a description that matched my client. Throughout the record and in the administrative disciplinary proceedings, the statement is made that Mr. Franks identified my client. And in one point, Mr. Tristler, one of the defendants, used the phrase conclusively identified my client. And now how that, how they can take a description of my client and convert that into not only an identification, but a conclusive identification, I think is very significant. Mr. Dunham, is it the plaintiff's position that it was just a coincidence that the guy he happened to chase out into the parking lot had been stabbed by somebody else in the bar in an unrelated incident? Exactly, Your Honor. And if you look at the police report, what happened is that there were other individuals that the officer identified. They had blood. There were people that observed this fight between Franks and these other individuals. None of the people that the officer interviewed in the bar in any way identified Hess or anybody else in his large institution bar. And they were in completely different parts of the bar. All they had learned was that there was something going on. And I think the record indicates that they've been told somebody had a gun and they were getting out of there. And so the coincidence is, is while they're leaving the door, that's when Franks is leaving at the same time. And they felt like they had been assaulted. So my client was not arrested. Subsequently, the decision was made to arrest my client. He was released on bond and entered Southern Illinois University. My client was in the first semester of his final year at SIU. And through his own affidavit, after the altercation in the bar, after he was arrested, he was released on bond. He was on campus at least 20 times, attending his classes and the like. Well, the decision was made to arrest. And then on December 11th, Defendant Tristler was in charge, involved with student discipline, is reading police reports, sees this police report and decides that he's going to recommend to Defendant Schumerschein, the dean, that my client should be immediately suspended. Now, when I took the dean's interim suspension order, and she relied solely, solely on the information supplied to her by Tristler. And the only information that Tristler had at that time was the police report. Now, this was very significant to my client, because he was at the end of the semester, he was in his second F in the other course. Mr. Dunham, could we get to the constitutional issues here? You've challenged the interim suspension, but I If you look at the order, if you look at the back page of the order, if it had been read carefully by Mr. Hess's counsel, there is a possibility that he could have had an appeal of that interim suspension order to the dean. And he didn't do that? And he did not do that. So, I mean, on the due process problem there, I frankly don't see anything much worse than an ex-party TRO, where the issuing judge has to be available, basically, at the drop of a hat to hear from the Indian joint party. Well, Your Honor, all I can say is the last time I tried to get a TRO done in Southern Illinois, the judge wasn't available. It's not like we're up here Cook County. And if you look at the record, the timing of the examinations, if he had appealed to Dean Summershine, it's not any way clear that he could have been reinstated in time to take those examinations. Well, he could have raised it right at the time, instead of cursing out Mr. Trisler, right? He'd like to be heard at that point. If you look from the context of the depositions, Mr. Trisler was there to serve the interim suspension. He wasn't there to discuss the case further. There was nothing that could be done at that time. Mr. Trisler made it very clear that there was nothing that could be done at that time. The question was asked, can I take my final examinations? Mr. Trisler said, we don't do that. And when I asked Mr. Trisler in his deposition, I said, well, even your student conduct toad permits for mitigating circumstances. It was right there in the student conduct toad. I said, could you have said, could you have modified your order so my client could have taken his examinations and been escorted on campus with a police officer, taken his examinations and exited campus? And Mr. Trisler indicated that it was a possibility because the student conduct toad permits that. But that was, in his words, that's not something we do. That's a quote out of his deposition. And so when we think that due process is implicated here, there is some kind of burden, it seems to me, that's on the defendant's school. As they themselves raise in their brief, frequently we have a balancing proposition when it comes to due process. The Goss versus Lopez case, that was a suspension case, a 10-day suspension case. And the Goss court made it very clear that when you have expulsions in question, then the balancing needs to be much stronger in favor of the student. I want to make one more point because I think if I can prevail on this point, it's going to go a long way for winning the appeal. In the Williams versus Windler case, this court basically had before it the situation where some black students at SIU had been involved in hazing. And the bulk of the opinion involved race discrimination. But at the very last paragraph of the opinion, this court made clear that if the students had challenged the fact that they had been involved in hazing, then they would have been entitled to a due process hearing. The last time I was here, I ignored these lights here, I blew by all of my rebuttal time, and I regretted it. So if there aren't any other questions from the court, I'd like to... The question is, you've described what you think are the terms of the contract. Correct. Where do we find those in the record? Well, Your Honor, if you look at the second amended complaint, we make it very clear that the discipline was inappropriate, it was improper, and we attach. Okay, go ahead. And so it's clear that we were challenging the merits of the discipline and that we did not get due process. All right. Thank you, Mr. Dunham. Thank you, Your Honor. Mr. Wilson. Thank you, Your Honor. Good morning. May it please the court, Mr. Dunham. My name is Tom Wilson. I represent the Board of Trustees and the three individually named administrators. I'd like to address the constitutional issues in this case. And very clearly, this court has spoken many times, we're not at all riding on a clean slate, that in a case where you have a student who is, whether he's an undergraduate or a graduate student, whatever his status is for a public university in Illinois, he has the burden of establishing a claim of entitlement in order to give rise to a property interest. It does not just exist inherently. The court has said that in Charleston and in Bissauer and in Windler. In this case, Mr. Hess never did that. We challenged on two motions to dismiss, it rolls on our motion for summary judgment, show us where this claim of entitlement is, show us where the contract terms are that you're seeking to enforce. Not only did he voluntarily dismiss his breach of contract claim, but when I asked Mr. Hess at his deposition about the contract, he had absolutely no basis whatsoever to tell me what he relied on or where the contract was that gave him this right to due process. With regard to the claims of violation of due process, the university can impose an interim suspension when they have reason to believe that an individual student possesses an immediate threat to other individuals on the campus. Now obviously the university needs to act quickly. There's never been, to my knowledge, a case from this circuit saying that the student has a pre-termination or a pre-deprivation right to a hearing on an interim suspension. In the Medlock case, I believe, made that very clear as well. In this case, the university was confronted with a situation where they learned on December 10th that Mr. Hess had been charged with aggravated battery for stabbing an individual multiple times. They acted very quickly in order to impose the interim suspension, and as Your Honor pointed out, the record is clear, and I believe Mr. Tristler testified that he explained the right to a hearing with the dean within 48 hours to Mr. Hess. What did the plaintiff say about that question? What did he say? What is the plaintiff's testimony about Tristler's point? Is there any disagreement there? I don't believe there is. The notice that is handed to the student also expressly tells the student in large capital letters on the back side of the one-page document about this right to be in the dean's office within 48 hours. So all of this argument about there were other alternatives that could have been proposed, that was something that even if he had a due process right, Mr. Hess clearly forfeited in not asking for the immediate post-suspension hearing or the ability to propose alternatives to the university. With regard to the claim in this case that the rights to due process were violated because of a biased hearing officer, and that's what the plaintiff spends much of their brief talking about, two points. First, in the complaint itself, Mr. Hess alleged that Mr. Tristler was biased because Mr. Hess and his mother called him names and used profanity. That was something Mr. Hess certainly knew about prior to the hearing when he knew who the hearing officer was going to be. He never raised it before the hearing, at the hearing, or after the hearing in his appeal. And if you think about it from a practical point of view for a university, if all a student has to do is call the hearing officer names and accuse them of having prejudged the case and used profanity, the hearing officer has really two choices. They can step aside and let another hearing officer take over, who's likely going to be subject to the same accusations, and we never have a hearing. Or they can, believing that they are unbiased, proceed with the hearing and then be subject to, under the plaintiff's theory, a jury trial in federal court where they're personally going to be held responsible, potentially for damages. It's no different than a judge that the mere statements to a court that accuse the judge of bias or prejudice is not enough by itself to require the judge to recuse himself or herself. And in this case, the record is very clear from Mr. Tristler's testimony. He was not biased against Mr. Hess. He held no prejudgments against Mr. Hess. This is something Mr. Tristler does as part of his job. He's done it 150 to 200 times. People are upset when you confront them at the police station in the middle of the night. They're unhappy. Their families are unhappy. There's nothing in the record to create a genuine issue of material fact as the lower court held to establish Mr. Tristler's bias. Finally, with regard to the claim of substantive due process, we can debate the merits as to whether Mr. Hess was guilty or not of the stabbing. There's evidence on both sides at that point. But that's not the role of the federal court or a federal jury. It does not sit as an appellate body. It does not sit in an administrative review. The question is simply, was there some evidence? And in this case, we know there's a few facts which are indisputable. Mr. Franks, the victim, was stabbed multiple times and fled to get to the hospital. Mr. Hess was observed by the first arriving police officer chasing Mr. Hess across the parking lot and pounding on his driver's side window and did not stop until taken to the ground by the officer. Number three, Mr. Franks immediately identified by description and clothing an individual who matched Mr. Hess's description such that Mr. Hess himself testified that he agrees it closely matched his description that evening and the officers were immediately able to identify who it was Mr. Franks was talking about. Collectively, that is some evidence such that the decision of Mr. Tristler was certainly not arbitrary or shocking to the conscience. And did plaintiff testify at that hearing? He was given the opportunity. He was represented by counsel who was there as a consultant, and he asserted his Fifth Amendment right not to talk about what happened that evening at the bar. So the testimony that Mr. Hess brought forth later about he personally knew the victim, Mr. Franks, raising the question of why wasn't he identified by name, that was never brought out, even though he had the opportunity to do so at the hearing. How did Mr. Tristler find out about these charges against plaintiff? I don't know that that's necessarily in the record, but the answer, Your Honor, to the question is the university has a working relationship with the local police departments, and when the police departments have an individual who they either know is a student or believe, based on age, is potentially a student at the university with a matter such as this where there's a violent felony, they send us the police reports. So that was it? Excuse me? That's where you got the information? Yes, sir. Got it on the 10th of December. Got the police reports and the rest of the information on the criminal charges the next day and acted that evening. If you have no further questions, Your Honor, I will yield any more time. All right. Thank you, Mr. Olson. We would ask you to affirm. Mr. Dunham? If you look at the exhibits to the Second Amendment complaint, it becomes very clear that they are discharging my client through the disciplinary proceedings. I think the very last paragraph of Williams v. Wendler makes clear that the student, if he identifies the basis of his complaint in the complaint, that there is a due process right. I think the defense would have you believe that there is no possibility for a property interest if it's a secondary education case, and I don't think that's true. I would agree if the only basis for asserting bias against Mr. Trisler was the fact that my clients were very annoyed at him, that that in and of itself does not raise a bias concern on his part. As he testified, he's been cussed out many times before, but that's not what we're complaining about. Number one is I took the dean's deposition, and I asked about the conversation between Mr. Trisler and the dean about what Mr. Trisler said, and it's quoted, the entire dialogue, excerpts from the deposition of Dean Schirmesheim is in the brief, and basically Mr. Trisler indicated that Hess had stabbed Franks, that Mr. Trisler believed that Hess had stabbed Franks, that Mr. Trisler had concluded that Hess had stabbed Franks. In other words, he had reached a conclusion. Now, he was a head of the department. He could have assigned somebody else to that case. We didn't learn about this bias until we took Dean Schirmesheim's deposition. How is that different from a judge who finds good cause to issue a temporary restraining order? And then here's the case later. The red light is on, if I can answer. Of course. This is a unique situation. Mr. Trisler turns out to be the judge, the prosecutor, and the jury in this case. He was the judge because he's the one that recommended the sanction. He was the jury because he found the facts. The only facts he had was that police report. They admit the university had the burden of proof, and the university didn't induce any witnesses. We brought the police officer that arrested my client, and he concluded that he didn't think my client was implicated in the stabbing, and that he's also, Mr. Trisler is the prosecutor, because he's the one that gathered all of the facts. He was a judge, jury, and prosecutor. Due process is implicated. There's one other point I'd like to make. In the prison setting, it has been held by numerous courts that if you are relying on a confidential informant who makes an actual identification, that's a substantive due process violation until you can determine the credibility of the informant. There's been no evidence in this record indicating that Franks was credible about anything that he said. Thank you, Your Honor. Thank you, Mr. Dunham. Thank you, Mr. Wilson. The case is taken under advisement.